**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————————
                                                        )
**MARY SANDERS,**                                        )
                                                        )
            **Plaintiff,**                               )
                                                        )
      **v.**                                             )      **Civil Action No. 07-01169 (ESH)**
                                                        )
**UNITED STATES OF AMERICA,**                            )
                                                        )
            **Defendant.**                               )
———————————————————————————       )

DEFENDANT'S EXPERT DISCLOSURES OF DR. **TERRANCE BAKER**, EXPERT IN
EMERGENCY CARE AND FORENSIC MEDICINE AND **HART KERLIN**,
CERTIFIED FIRE AND EXPLOSION EXPERT, TRIDENT ENGINEERING ASS.,INC.

The attached expert disclosures of Dr. Terrance Baker and Mr. Hart Kerlin were prepared pursuant to Fed. R. Civ. P. 26(a)(2)(B). Dr. Baker is an expert in forensic medicine, emergency medical care and geriatrics. He provides expert opinions relating to the emergency medical care administered to decedent, Benjamin Saunders, at the time of his fatal accident; and the cause of his death. He also provides expert opinions related to the care provided to Mr. Saunders while a resident of the VA Medical Center, Comprehensive Nursing and Rehabilitation Center ("CNRC"), including his opinions that Mr. Saunders was properly determined to be a safe smoker and that the accident was not a smoking accident related to any high risk behavior on his part or negligence on behalf of the CNRC facility staff. Mr. Kerlin is a certified fire and explosion expert with Trident Engineering Associates, Inc. He provides expert opinions relating to his investigation of the causes of the fire and the circumstance relating to the death of Benjamin Saunders, the decedent in this case. The appendices to Mr. Kerlin's report, including photographs, diagrams, and a video demonstration recorded on compact disk are being filed in the Clerk's Office and served on plaintiff by first class mail, this 5th day of May 2008.

Defendant previously requested an extension of time to May 9, 2008, to file the expert disclosures of Dr. Stephen Milner, defendant's burn expert.

Respectfully submitted,

_____/s/_____

CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
555 4th St., N.W.  Room E-4204
Washington, D.C. 20530
202-514-7137

# ATTACHMENT A

# EXPERT DISCLOSURES

# TERRANCE L. BAKER, M.D.



# Terrance L. Baker, M.D.

7027 Mt. Vista Rd. • Kingsville, MD 21087 • 410-592-9889 • FAX 410-592-8464

May 5, 2008

Claire M. Whitaker, Esq.
Assistant U.S. Attorney
U.S. Department of Justice
Judiciary Center Building
555 Fourth Street, N.W. Room E-4204
Washington, DC 20530

Re:    Mary Sanders, as personal representative of the Estate of Benjamin Sanders v.
United States of America.

Dear Ms. Whitaker:

I, Terrance L. Baker, MD am a licensed physician Board Certified in Geriatrics, Family
Practice, Emergency Medicine and Forensic Medicine. I am a physician licensed to
practice medicine in all of its branches. I currently practice or teach in the areas of
medicine applicable in this case. I am familiar with the standard of care for medical
practices that currently relate to issues of care and treatment of patients such as Benjamin
Sanders. I am familiar with the standard of care in this case by virtue of my training,
education and experience of 25 years in the same field and/or related healthcare fields. I
can fairly evaluate the quality of care that was provided. Attached is a copy of my current
curriculum vitae.

I have reviewed the records of Benjamin Sanders. These include the following:

1.    SP Form 95 (Complaint).
2.    Supplement of SF Form 95 stating the basis of the estate of Benjamin Sanders
claim.
3.    Medical records from VA Comprehensive Nursing and Rehabilitation Center
(CNRC) in Washington, DC.
4.    Medical records from VA Hospital in Washington, DC.
5.    Death Certificate.

(1)



# Terrance L. Baker, M.D.

7027 Mt. Vista Rd. • Kingsville, MD 21087 • 410-592-9889 • FAX 410-592-8464

6.     Autopsy Report including photographs.
7.     Applicable fire codes and smoking regulations adopted by the Veterans
       Administration (VA) Hospitals including:
       a.     Codes, standards and executive orders, VHA program guide, PG-
              18-3, topic I, July 2006.
       b.     Life safety code, NFPA 101, 2006 edition; published by the
              National Fire Protection Association.
       c.     Uniform Fire Code, NFPA 1, 2006 edition; published by the
              National Fire Protection Association.
       d.     "Smoke Free Policy for VA Healthcare Facilities", VHA Directive
              2003-035 Publication, July 1, 2003. Expiration date July 31, 2008.
       e.     "Establishment of a Smoke-Free Environment", Department of
              Veteran Affairs Medical Center, 50 Irving Street, N.W.,
              Washington, DC 20422. Medical Center Policy Memorandum No.
              0020, January 2005.
       f.     "Safety Management Plan", Department of Veteran Affairs Medical
              Center, 50 Irving Street, N.W., Washington, DC 20422. Medical
              Center Policy Memorandum No. 138-12, October 2006.
       g.     "Smoking Risk Protocol", Department of Veteran Affairs Medical
              Center, Washington, DC Nursing Service, last dated October,
              2006.
       h.     "Smoking Policy", Geriatrics and Extended Care Comprehensive
              Nursing and Rehabilitation Care (CNRC), Washington, DC, CNRC
              Policy Memorandum No. 19, February 2005.
       i.     "Report on Test on Automatic Sprinkler Field Samples", May 05,
              2006, Underwriter's Laboratories, Inc. for Veterans Affairs
              Medical Center, 50 Irving Street, N.W. Washington, DC 20422.
       j.     Memorandum from the Veterans Administration Medical Center
              dated April 27, 2006 regarding "Report of a Vulnerability
              Assessment".
       k.     Veterans Affairs Medical Center Policy Memorandum No. 138-53-
              Code Fire Pagers for the Hearing Impaired dated September 2006.
8.     District of Columbia Fire and Emergency Medical Services Department Incident
       Report.
9.     District of Columbia Metropolitan Police Department Incident - Based Event
       Report.

(2)



# Terrance L. Baker, M.D.

7027 Mt. Vista Rd. • Kingsville, MD 21087 • 410-592-9889 • FAX 410-592-8464

10.     Subpoena responses from the Metropolitan Police Department:
      a.     Death Report.
      b.     Autopsy Report.
      c.     WACIIS Investigative Supplemental Report.
      d.     MPD Arson Task Force Fire Fatality Report.
      e.     ATF Reports.
      f.     Incident Based Event Report.
      g.     Supplemental Police Report dated April 13, 2006.
      h.     Notes of Detective Kim Lawrence.
      i.     Floor plan.
      j.     Staffing Schedule.
      k.     Fifteen (15) color photographs of decedent.
      l.     Eighty (80) color photographs of Smoking Room, decedent's wheelchair, sprinklers and fire extinguishers.
      m.     Deposition testimony.
      n.     Voluntary witness statements;
            -   Johnniie M. Belton
            -   Moses Oyegbami
            -   Yvette Turner
            -   Robin Blackmon
            -   Georgi Moyer
            -   Jerry L. Phillips
            -   Wanda Smith
            -   Donna Harris-Nwangyu
            -   Jane Njenga
            -   Patricia Hamitte
            -   Cobertha Bizzelle
            -   Helen Choi
            -   Solauye Waller
11.     Deposition Testimony:
      a.     Frances Henderson, RN.
      b.     Scott Burgoon.
      c.     Ashraf Alehossein, CRNP.
      d.     Edita Micu.
      e.     Robert Carnevale.
      f.     Raya Kheirbek, MD



# Terrance L. Baker, M.D.

7027 Mt. Vista Rd.  •  Kingsville, MD 21087  •  410-592-9889  •  FAX 410-592-8464

       g.     Jerry Lee Phillips, CNA.

       h.     Sarah M. Colvin, MD

12.    Expert Reports including:

       a.     Richard G. Stefanacci, DO., dated 2/23/08.

       b.     David M. Hammerman, Fire Protection Engineer, P.E. dated 12/26/06 and 2/21/08.

       c.     Daniel D. Lozano, MD, dated 10/12/07 and 2/25/08.

       d.     Ilene Warner-Marion, RN, dated 11/27/06, 12/24/06 and 2/22/08.

13.    Fire Scene Evidence Review, Examination with Assistant U.S. Attorney Claire Whitaker and Hart Kerlin on 4/28/08 at Metropolitan Police Department.

14.    Photographs of Benjamin Sanders taken following his tragic death by fire.

15.    Photographs including two (2) black and white photos of the VAMC Smoking Shelter dated 3/20/06.

16.    Correspondence from CETROM Inc. to the VAMC Safety Office dated 5/10/06.

I have the expertise to evaluate the reliability of these records. These records are of the type usually relied upon by reviewers such as myself. These records appear, in fact, to be reliable and complete. As healthcare becomes increasing complex, it is important for reviewers such as myself to keep the documented interaction between a patient and healthcare facility at the heart of the review process. Equally important is an understanding that the standard of care for Nursing Homes allows Long Term Care healthcare facilities to document by exception. Accordingly, many of the normal and "non-exceptional" activities and events in the care that is being provided to a resident patient are not documented or commented upon. Only those occasions where an "exception" occurs does the standard of care require the institution to document in the medical records the nature of the exception with the subsequent evaluation and treatment provided to the condition of exception. Additionally, patterns of care and treatment are an important part of the reviewers evaluation.

While it is true to some extent all patient interactions are unique, however, there are specific medical practices that a treating healthcare institution would be expected to provide to meet the applicable standard of care. I have specifically reviewed these records to determine whether within a reasonable degree of medical certainty that the standard of care was met.

The above records disclose the following facts and summary:

(4)



# Terrance L. Baker, M.D.

7027 Mt. Vista Rd. • Kingsville, MD 21087 • 410-592-9889 • FAX 410-592-8464

Benjamin Sanders a 64 year old African American male who was born on May 21, 1941 was admitted to the Veterans Administration Medical Center Nursing Home (CNRC) on February 7, 2005. Mr. Sanders had served in Vietnam from 2/7/1967 to 2/6/1969 and risen to the rank of Buck Sgt. Mr. Sanders had two (2) AA Degrees. Subsequently Mr. Sanders had served as a federal customs agent for more than 20 years before his retirement. Mr. Benjamin Sanders disability was determined by the Veterans Administration to be 100% service related.

Medical conditions documented for Mr. Sanders included the following:

- Personal history of tobacco use.
- Chronic obstructive pulmonary disease.
- Mild cognitive deficit (MMSE 19/26).
- Mobility deficit related to CVA with left hemiparesis and contracture.
- Urinary incontinence.
- Fall risk with no documented falls.
- Chronic hypertension.
- Diabetes mellitus.
- Anemia.
- Mild chronic renal insufficiency.
- Dysphasia secondary to CVA.
- Mixed conductive and sensorineural hearing loss.
- Partial-complex seizure disorder since childhood.
- Bullous pemphigoid.

Admission to the Nursing Home for long term care was required after Mr. Sanders suffered a stroke in January 2005. Due to Mr. Sanders disability and the inability of his wife and daughter to care for him at home due to concerns for their own health, Mr. Sanders was admitted to the Veterans Administration Medical Center Comprehensive Rehabilitation and Nursing Center. During Mr. Sanders thirteen (13) month stay at the CNRC his functional abilities are documented as follows:

- At risk for falls without any documented falls.
- No pressure ulcer development.

(5)



# Terrance L. Baker, M.D.

7027 Mt. Vista Rd. • Kingsville, MD 21087 • 410-592-9889 • FAX 410-592-8464

- Mild cognitive loss with Mr. Sanders remaining responsible for his own decision making, demonstrating adequate judgment, and functioning as an active mobile intelligent member of the nursing home community.
- Mood good overall with occasional periods of sadness and/or mild depression over his physical condition. No episodes of delirium. Stable. Leave of Absence (LOA) recommended to visit family.
- Communication - adequate to good - verbal. Patient speaks understandably, but was aphasic.
- Nutritional status good. Ate 75 - 100% of meals frequently and enjoyed "junk food" at bedtime.
- No feeding tubes required.
- Adequate hydration. Consumed fluids well.
- Restraints - none required.
- Adequate hearing with and without his hearing aid.
- Vision adequate with glasses.
- Mental status. No mental function variations noted over the course of the day. Not easily distracted. No periods of altered perception or awareness of surroundings. No periods of restlessness. No periods of memory change except during times of acute illness which were brief and transient. No change in cognitive status except during above documented brief periods of acute illness.
- Well respected member of the Nursing Home Community. Patient fully capable of making his own decisions. No behavior program required. No hallucinations. No resistance to care although patient would at times independently and with full knowledge of his decisions elect to decline care. No withdrawal from activities ever noted.

The CNRC monthly medical review documented on February 27, 2006 by Ashraf Alehossein, CNP noted Mr. Sanders with CVA-DVT-right MCA infarct with left hemiparesis and mild dysarthria, prior history of three (3) CVA's with mild dysphasia. Soft diet. Documentation in this note includes evaluation of the patients smoking behavior. "Patient continues to smoke 3-4 cigarettes a day, has no plan to quit, reinforce the importance of smoke sensation with his co morbidity, continue to educate and encourage patient to attend smoke sensation class". Throughout Mr. Sanders thirteen

(6)



# Terrance L. Baker, M.D.

7027 Mt. Vista Rd. • Kingsville, MD 21087 • 410-592-9889 • FAX 410-592-8464

(13) month admission to the CNRC there is frequent documentation that Mr. Sanders smoking behavior was evaluated by the Interdisciplinary Case Team collectively as well as by the individual team members. For example, on February 27, 2006 a progress note states that "Vet continues to smoke despite a history of frequently respiratory infections, he has no plan to quit, continue to reinforce and encourage".

The last assessment of Mr. Sanders functional abilities dated March 3, 2006 states that he was at risk for falls, unable to ambulate, needs assistance to turn, requires lift equipment to transfer from bed to chair, requires complete assistance for hygiene and has garbled speech. At all times during Mr. Sanders admission he was known to and determined by members of the Interdisciplinary Treatment Team to be a safe responsible smoker. At no time was he identified as "high risk". At no time did any member of the Interdisciplinary Treatment Team and or his family document that he posed a threat to himself or others due to his reluctance to follow smoking regulations. At no time except during periods of acute illness was Mr. Sanders ever documented to have a medical condition that prevented him from fully understanding the CNRC Smoking Policy and during these times he didn't smoke.

On March 19, 2006 at approximately 6:40 p.m. "minutes" after Jerry Smith, CNA left Mr. Sanders after spending a period of time talking and smoking together, Mr. Sanders was found engulfed in flames in the designated smoking room. The resident and his electric wheelchair were in flames described as orange yellow and reaching heights of several feet above his head. A Code Blue and Code Red were initiated and the fire was extinguished with fire extinguishers, normal saline and blankets. The patient was then immediately taken to the Medical Intensive Care Unit (MICU). Despite an absence of any vital signs and burns over 50% of his body ACLS resuscitation was attempted and Mr. Sanders was pronounced dead at 7:18 p.m. after a 22 minute Code Blue.

On March 20, 2006 autopsy performed by Sarah M. Colvin, MD documented that Mr. Sanders measured 5'7" and weighed 128 lbs. and appeared the reported age of 64 years. External and internal injuries included:

1.     Second and third degree thermal injuries including the face, neck, anterior chest, back of the top of the head, arms and forearms, portions of the anterior thighs, anterior right leg, posterior knees, all demonstrated severe second and third degree burns with charring. The epiglottis was burned with loss of mucus membranes.

(7)



# Terrance L. Baker, M.D.

7027 Mt. Vista Rd. • Kingsville, MD 21087 • 410-592-9889 • FAX 410-592-8464

2.  Soot and smoke inhalation noted. Soot noted throughout the patients airways including the proximal branches of bronchi, with mucus filled with soot in the trachea.
3.  Cardiovascular system exam revealed moderate atherosclerotic changes including 50 to 70% stenosis with calcific atherosclerosis of the left anterior descending and right coronary arteries. The descending aorta demonstrated moderate atherosclerosis. No evidence of an acute myocardial infarction observed.
4.  Head and central nervous system exam demonstrated changes of a large 5x1" right sided defect of parenchyma consistent with a cerebral infarct in the distribution of the middle cerebral artery.

Final diagnosis included:

1.  Second and third degree thermal burns.
2.  Soot and smoke inhalation.
3.  Hypertensive cardiovascular disease.
4.  Atherosclerotic cardiovascular disease with remote cerebral infarct.

Cause of death determined to be second and third degree thermal burns. Contributory condition soot and smoke inhalation. Manner of death: Accident.

It is my professional opinion that within a reasonable degree of medical probability that the Veterans Administration Medical Center Nursing Home (CNRC) acting through its agents, servants and or employees including its physician and nursing staff met the applicable standards of care in the treatment of Benjamin Sanders. Specifically the CNRC fulfilled their duties of care and met the applicable standard of care in the treatment of Benjamin Sanders including March 19, 2006 when Mr. Sanders was found engulfed in flames in the smoking room and the MICU care that followed. Mr. Sanders was a resident in the Veterans Administration Medical Center Nursing Home from February 7, 2005 until March 19, 2006. The medical record of Benjamin Sanders demonstrates that the Veterans Administration Medical Center Nursing Home facility met their duty and fulfilled the applicable standards of care in ways that included but were not limited to the following:

1.  Exercised the degree of care and skill that a reasonably competent nursing home acting in similar circumstances would use.
2.  Exercised reasonable care and skill in the diagnosis, care and treatment of Benjamin Sanders.

(8)



# Terrance L. Baker, M.D.

7027 Mt. Vista Rd. • Kingsville, MD 21087 • 410-592-9889 • FAX 410-592-8464

3.  Performed adequate and proper diagnostic test and procedures to determine the nature, extent and severity of Mr. Sanders condition. The standard of care did not require the Veterans Administration Medical Center Nursing Home (CNRC) to take any further actions than are documented.

4.  Monitored and evaluated continuously Mr. Sanders condition throughout his thirteen (13) month admission from February 7, 2005 until the time of his death March 19, 2006.

5.  Adjusted the course of Mr. Sanders treatment in response to ongoing continuous surveillance and evaluation by the Interdisciplinary care team and each of Mr. Sanders treatment team members.

6.  The CNRC staff clearly devised a care plan which included services that allowed Mr. Sanders to obtain and maintain his highest practicable physical, mental and psychosocial well being. It is my professional opinion that due to the care provided by the Veterans Administration Medical Center Nursing Home staff, his doctors, nurses and nurse practitioners, he was able to obtain and maintain his highest practicable physical, mental and psychosocial well being.

7.  The Veterans Administration Medical Center Nursing Home developed adequate care plans that met the standard of care which identified Mr. Sanders problems and needs; addressed his special care requirements necessary to improve and maintain his status.

8.  The CRNC staff established realistic and practical goals for each problem or need identified and tailored to Mr. Sanders approaches to accomplish each goal.

9.  The Veterans Administration Medical Center Nursing Home staff documented within the standard of care assessments of the needs of Mr. Sanders, establishment of an appropriate plan of initial and ongoing care and of the care and services provided. Documentation in a nursing home setting differs from that seen in acute care. Accordingly, the documentation as discovered in my review of Mr. Sanders medical records meets the standard of care for patients like Mr. Sanders admitted to a nursing home with the same or similar conditions as Mr. Sanders.

10. The Veterans Administration Medical Center Nursing Home (CNRC) acting through its agents, servants and or employees complied with the applicable fire codes and smoking regulations adopted by the Veterans Administration (VA) Hospitals. No apparent violations that likely were contributory to Mr. Sanders fatality are observed. At all times Benjamin Sanders was classified as a responsible safe smoker. Accordingly, at all times the CNRC staff was compliant with Uniform Fire Code NFPA 1, 2006 edition. In support of these adopted national

(9)



# Terrance L. Baker, M.D.

7027 Mt. Vista Rd. • Kingsville, MD 21087 • 410-592-9889 • FAX 410-592-8464

fire codes and standards; and to meet their fire safety goals relevant to smoking materials and patient safety, VA policies were established and updated periodically. The VA directive 2003-035 published the "Smoke Free Policy for VA Healthcare Facilities". This policy emphasized a smoke free environment within the VA healthcare facility and smoking is allowed only in designated smoking areas. Again, Mr. Sanders is found to have been compliant with the rules, regulations and policies established by the CNRC facility. On March 19, 2006 Mr. Sanders in fact was smoking in the designated smoking room. Throughout Mr. Sanders thirteen (13) month admission to the CNRC facility his smoking habits and behaviors were on a daily basis examined by members of the Interdisciplinary Treatment Team and determined to be safe and appropriate. At no time did Mr. Sanders demonstrate "high risk" smoking behavior. At no time did Mr. Sanders pose a threat to himself or others due to his reluctance to follow smoking regulations. Furthermore, at no time did Mr. Sanders, except during periods of acute exacerbation of his chronic underlying medical condition, which were transient in nature demonstrate a medical condition that would prevent him from fully understanding the smoking policy. Based upon the medical record and eyewitness testimony, Mr. Sanders was a safe, effective smoker compliant with the rules and regulations that existed at the CNRC during the time that he was a patient. At all times Mr. Sanders demonstrated adequate mental acuity and physical abilities that would allow him to monitor his smoking, follow any applicable rules and regulations including use of the appropriate smoking areas and to extinguish a fire or ashes that might develop during the course of his smoking. Mr. Sanders had the ability to recognize an unsafe situation and to know the corrective action for that situation related to his smoking. Mr. Sanders had the ability to physically extinguish cigarettes and or ashes. Mr. Sanders had the ability to remove himself from ordinary fire situations related to dropped ashes, embers or cigarettes. Mr. Sanders had the ability to recognize unsafe situations and to know a corrective action. Mr. Sanders had trained and worked in Customs for greater than 20 years.

11.  Veterans Administration Medical Center Nursing Home staff including its doctor's and nurses responded to Mr. Sanders fire on March 19, 2006 in an adequate and timely manner. After the fire was extinguished emergency care was initiated and falls within the standard of care for healthcare providers responding to the extraordinary circumstances experienced in the care and treatment of Benjamin Sanders at this time. However, Mr. Sanders injuries were not survivable and within a reasonable degree of medical certainty Mr. Sanders died during the fire

(10)

# Terrance L. Baker, M.D.

7027 Mt. Vista Rd. • Kingsville, MD 21087 • 410-592-9889 • FAX 410-592-8464

which engulfed him with flames at times leaping several feet above his head. Mr. Sanders more likely than not experienced injuries which had resulted in death prior to his transport to MICU. The fire that engulfed Mr. Sanders in my opinion was sudden and unexpected and is explained as follows.

On April 28, 2008 at 10:30 a.m. I traveled to the Metropolitan Police Department Evidence Control Branch on 2235 Shannon Place, S.E., Washington, DC 20020. Along with investigator and expert Hart Kirlin and Assistant U.S. Attorney Claire Whitaker, I examined all forensic evidence collected from the March 19, 2006 fire scene. After carefully working through, examining and recreating the events leading up to Mr. Sanders death, I have been able to make the following observations within a reasonable degree of medical certainty.

1.    Mr. Sanders did not die of a smoking accident related to any high risk behavior on his part or negligence on behalf of the CNRC facility staff. Facts known include:

    a.    Mr. Sanders was a right handed smoker and falling ashes and cigarettes would have been from the mid-line to the right side. Mr. Sanders right arm had full range of motion and normal strength for his age. Mr. Sanders very actively used his right arm to maneuver his electric wheelchair throughout the VA facility and beyond. Mr. Sanders had completely normal range of motion and function of the right arm.

    b.    Timing of the witnessed fire demonstrates that the speed of the fire is not adequately explained by simple ashes/embers or a lit cigarette falling onto his clothing. Time to create a fire of the magnitude demonstrated in discovery to date cannot be accounted for by the time known to elapse between observations by eyewitnesses.

    c.    Magnitude of fire with flames 3' above the head of Mr. Sanders clearly is not explained neither by the time that elapsed between eyewitness observations of Mr. Sanders nor the magnitude and intensity of the fire created. This fire clearly needed a propellant or some agent to accelerate it.

    d.    Difficulty in putting out fire particularly fire along the left seat of the chair which is the only part of the seat cushion burnt/melted.

(11)



# Terrance L. Baker, M.D.

7027 Mt. Vista Rd. • Kingsville, MD 21087 • 410-592-9889 • FAX 410-592-8464

e. Examination of chair and fanny-pack clearly shows fire started in the fanny-pack - outer compartment against the side rail of the chair. Outer pouch of fanny-pack that is burnt fits exactly into area of chair which experienced maximum heat of fire and experienced maximum damage.

f. Examination of fanny-pack demonstrates that inner aspect of pack is relatively intact with minimum or no fire damage. This part of the fanny pack was up against the patient.

g. Careful examination of outer fanny pouch pack demonstrates two adjacent orange Bic lighters. One Bic lighter has top i.e. igniter portion sheered off. Component of this sheered off part of lighter was found in silver evidence canister amongst ashes of clothing and miscellaneous ash found at the scene. Second Bic lighter in the outer fanny pouch is intact immediately adjacent to the first lighter that has been sheered off.

h. Burn pattern on chair, left pants, towel covering seat cushion, and seat cushion matches position of sheered lighter.

i. Even after Mr. Sanders was extinguished the left seat cushion and fanny pack continued to burn again demonstrating that more likely than not the fanny pouch containing the broken Bic lighter was in fact the site of the fires ignition which engulfed Mr. Sanders in short order and explains both the intensity of the fire witnessed and the magnitude of the flames experienced.

Mr. Sanders within a reasonable degree of medical certainty died of an unfortunate Bic lighter failure and not from a smoking accident. I am prepared to demonstrate to Council, my colleagues serving as Plaintiff's experts and the jury selected to try this case, if necessary, that myself working in conjunction with Investigator, Expert Hart Kirlin have discovered the true cause of this unfortunate tragic fire that claimed Mr. Sanders life.

## CONCLUSION:

Based upon a reasonable degree of medical certainty, it is my opinion that the Veterans Administration Medical Center Nursing Home (CNRC) Facility used such care as reasonably prudent healthcare providers practicing in the same field in the same and or similar locality would have provided under similar circumstances. It is my opinion that no significant breach in care occurred which caused and or contributed to Mr. Benjamin

(12)



# Terrance L. Baker, M.D.

7027 Mt. Vista Rd. • Kingsville, MD 21087 • 410-592-9889 • FAX 410-592-8464

Sanders death. Specifically, I disagree with the Plaintiff's Experts Richard G. Stefanacci, DO of the Health Policy Institute of the University of the Sciences in Philadelphia; David M. Hammerman, Fire Protection Engineer, P.E. of Marshall A. Klein and Associates, Inc.; Daniel D. Lozano, MD of the Lehigh Physician Group; and Ilene Warner-Maron of Alden Geriatric Consultants, Inc. With all due respect to my distinguished colleagues, I will demonstrate that Mr. Benjamin Sanders died from an unfortunate unforeseeable lighter failure and not from any "high risk" smoking behavior on the part of Mr. Sanders and certainly not related to any care and or lack of care provided by the CNRC staff. Therefore the Veterans Administration Medical Center Nursing Home staff at all times materially acted in accordance within the applicable standards of care of practice and there is nothing they did or failed to do which was a proximal cause of Mr. Sanders injuries and or death. Mr. Sanders died during this unfortunate fire as a direct and proximal result of second and third degree thermal burns with soot and smoke inhalation. The failed Bic lighter resulted in a rapid intense fire which rapidly engulfed Mr. Sanders resulting quickly in death.

I specifically reserve the right to add to, amend or subtract from this report as new evidence comes into discovery or as new opinions are formulated.

## DATA OR INFORMATION CONSIDERED IN FORMULATION OF OPINIONS:

a. In forming my opinions I have relied upon those records, reports, documents, exhibits, and burn scene evidence as listed at the beginning of this report.

b. Others to be provided later in the course of discovery i.e. depositions and other materials as discovery might reveal.

## EXHIBITS TO BE USED AS A SUMMARY OF OR SUPPORT FOR OPINIONS:

a. All fire scene evidence as collected by the Metropolitan Police Department.

b. All fifteen (15) color photographs of decedent.

c. All eighty (80) color photographs of smoking room, decedents wheelchair, sprinklers and fire extinguishers.

d. All photographs obtained during my collaborative investigation with Mr. Hart Kirlin on 4/28/08.

e. Court room recreation of events for the jury based upon a recreation of

(13)



# Terrance L. Baker, M.D.

7027 Mt. Vista Rd. • Kingsville, MD 21087 • 410-592-9889 • FAX 410-592-8464

those facts demonstrated to have occurred based upon fire scene and facts in discovery at this point.

## QUALIFICATIONS WITHIN THE PRECEEDING TEN YEARS:

A copy of my curriculum vitae is attached hereto and incorporated by reference.

## COMPENSATION:

Compensation to be paid for the study and testimony $400.00 per hour is my fee for the time invested to review documents and evidence; write reports; testify; render opinions and if necessary appear for courtroom testimony. $100.00 per hour is my fee for the time involved to travel as assigned by Council. No compensation has been received for the time invested in this case to date.

## PREVIOUS EXPERT DEPOSITION AND TRIAL TESTIMONY EXPERIENCE WITHIN THE LAST FOUR YEARS:

See Attached

Respectfully submitted,

Terrance L. Baker, MD

TLB/lmh

Attachments

(14)

## Compiled List of Cases That Have Gone to Deposition or Trial (2004 - Present)

### 2004

- Attorney Paul E. Turner/Newport News Virginia. Gloria Wilson, as personal representative of the Estate of Roland Wilson, deceased v. Peninsula Emergency Physicians Inc., a Virginia Corp. et al.

- Attorney Kenneth P. Hicks/Huntington, West Virginia. Thompson, et al v. University Physicians and Surgeons, Inc. et al.

- Attorney Ralph Young/Gonce, Young, Norris & Collum - Butler/Florence, Alabama. Doyle Young Case.

- Attorney Christy Thouvenot/Motley Rice, LLC/Mt. Pleasant, SC. Kathryn Knight as personal representative of the Estate of Fred Mitchell v. Spartanburg Regional Medical Center and Richard G. Byrd, MD.

- Attorney Nolan Carter/Law Offices of Nolan Carter/Orlando, Florida. Cody Jacobsen Case.

### 2005

- Attorney William P. Walker, Jr./Walker & Morgan, LLC/Lexington, South Carolina. Alton Davis Case.

- Attorney Kurt Aktug/Egerton & Associates/Greensboro, North Carolina. James Matthew Lawson case.

- Attorney Daniel B. Giroux/Prochaska, Craig & Giroux & Howell/Wichita, Kansas. Rosalie Jolly case.

- Attorney Clifford J. Shoemaker/Vienna, Virginia/Elizabeth Price case.

- Attorney Carmen Scott/Motley Rice, LLC/Mt. Pleasant, South Carolina. Billie Weiss McAbee case.

- Attorney Jared S. Newman/Newman & McDougall/Beaufort, South Carolina. Dorothy Nettles case.

- Attorney Johnny Driggers/North Charleston, South Carolina. Milton Blackburn case.

- Attorney Clifford J. Shoemaker/Vienna, Virginia/James Trent Rawley case.

## 2006

- Attorney Brian Geschickter/Shipman & Wright, LLP/Wilmington, North Carolina. Aquila Pearson Worley, Jr. case.

- Attorney Chareles J. Hodge/The Hodge Law Firm/Spartanburg, South Carolina. Isabella Martinez case.

- Attorney D. Cravens Ravenel/Baker, Ravenel & Bender/Columbia, South Carolina. Mattie Grace Rutledge case.

- Attorney David M. Adkinson/San Antonio, Texas/Sophia Orsak case.

- Attorney Rodney Brown/Younts, Alford, Brown & Goodson/Fountain Inn, South Carolina. Shawn Wilson case.

- Attorney Robert B. Newkirk, III/Hanzel & Newkirk/Cornelius, North Carolina. Herman Allen case.

- Attorney John Harnishfeger/Cochran Law Firm/Washington, D.C. Earl Anderson case.

- Attorney Jeffrey L. Mabe/Baker Law Offices/High Point, North Carolina. Michael J. Hackett case.

- Attorney Mat A. Slechter/Sampson, Smith & Slechter/Louisville, Kentucky. Patricia Bailey case.

- Attorney Herbert W. Louthian/Louthian Law Firm/Columbia, South Carolina. Carl E. West case.

## 2007

- Attorney Charles Henshaw, Jr./Furr, Henshaw & Ohanesian/Columbia, South Carolina/Maebell Cooper Vickery case.

- Attorney Kristen Ullman/Ullman, Bursa, Hoffman & Ragano,LLC/Tampa, Florida/ Rodney Riley v. Wellington & Crown.

- Attorney Bette R. Velarde/Law Offices of Daymon B. Ely/Albuquerque, New Mexico. Patricia Weir case.

- Attorney James Howell/Prochaska, Craig, Giroux & Howell/Wichita, Kansas. Robert Schlagel case.

- Attorney Robert M. Grant, Jr./Corne, Corne, & Grant, P.A./Newton, North Carolina. Esther Hoyle case.

- Attorney Christy M. DeLuca/Joe Griffith Law Firm, LLC/Mt. Pleasant, South Carolina. Travis L. Myers case.

- Attorney Ronald K. Zimmet/Zimmet & Quarles/Daytona Beach, Florida. Roger Bise case.

- Attorney John W. Johnson/Morris, Laing, Evans, Broch & Kennedy/Wichita, Kansas. Robert M. Overton case.

- Attorney Charles L. Becton/Becton, Slifkin, Bell & Bell/Raleigh, North Carolina. Amoy Baker case.

- Attorney Michael C. Mattson/Cooney, Mattson, Lance, Blackburn, Richards & O'Connor, PA/Ft. Lauderdale, Florida. Marvin Scott Holman case.

- Attorney Laurie Ammel/Stein, Mitchell & Mezines/Washington, DC. Teresa Allen case.

- Attorney D. Cravens Ravenel/Baker, Ravenel & Bender/Columbia, South Carolina. Bennie Mae Cook Clegg case.

- Attorney H. Keith Thomerson/Hinshaw & Culbertson/Jacksonville, Florida. Ethel Pope case.

- Attorney Elizabeth Kuniholm/Kuniholm Law Firm/Raleigh, North Carolina. Lea Brianne Owens case.

- Attorney Charles J. Hodge/Hodge Law Firm/Spartanburg, South Carolina. Khampiou Chittavong case.

# CURRICULUM VITAE

TERRANCE L. BAKER, MD
7027 Mount Vista Road
Kingsville, Maryland 21087
(410) 592-9889
(410) 592-8464 Fax

## EDUCATION:

The Johns Hopkins University, Bachelor of Science, Natural Science, 1977.

The Johns Hopkins University, Master of Science, General Special Education with Emphasis on Developmental Disabilities, 1979.

Independent Graduate Practicum Studies. Worked and studied at the John F. Kennedy Institute and Johns Hopkins Hospital Interdisciplinary Rehabilitation of Patients with Developmental Disabilities, 1977-1980.

The George Washington University School of Medicine, Medical Doctor (M.D.), 1984.

The Medical College of Virginia - Internship and Residency in Family Practice with Obstetrics at Riverside Hospital, Newport News, Virginia, 1987.

## BOARD CERTIFICATIONS:

National Boards Part I - III completed 1985.

American Board of Family Practice Diplomat, 1988-renewed 1994, 2001.

American Academy of Family Practice Fellow, 1995.

Geriatrics Certification Diplomat, 1996. Renewed 2006

Board Certification in Emergency Medicine, Diplomat, 1998.

American Board of Forensic Medicine, Diplomat, 1998.

American College of Forensic Examiners, Fellow, 2000.

## LICENSES:

Virginia #0101038243 (inactive)
North Carolina #35260
South Carolina #13210
Maryland #0058570

-1-

12/2006

## PROFESSIONAL CERTIFICATION:

Emergency Medical Technician, George Washington School of Medicine, 1984.
Advanced Trauma Life Support (ATLS), Provider/Instructor, 1986-present.
Advanced Cardiac Life Support (ACLS), Provider/Instructor, 1985-present.
Advanced Experienced Cardiac Life Support, 5/2002.
Advanced Pediatric Life Support (APLS), Provider/Instructor, 1996-present.
Pediatric Advanced Life Support (PALS), Provider/Instructor, 1992-present.
Advanced Burn Life Support (ABLS), Provider, 2001-present.
National Airway Management Course Provider, 1999-present.
Headache Therapeutic Advances and Management Strategies - Primary Care
    Network Provider, 1999-present.
American Medical Association Continuing Medical Education Award, 1987-
    2006.
GRS4- Geriatric Review Syllabus. Comprehensive 3 Volume, Review of
    Geriatric Medicine 2001. Renewed 2006.

## PROFESSIONAL PEER REVIEW:

Maryland Board of Physicians, 2004-present.
DelMarva Foundation, 2004-present.
MedChi Medical Society, 2002-2004.
Good Samaritan Hospital, Emergency Department Committee, 2002-present.
Good Samaritan Hospital, Credentials Committee, 2004-present.
Good Samaritan Hospital, Quality Assurance, Medical Chart Review of Standard
    of Care, Disciplinary Investigations in Internal Medicine, Emergency Medicine
    and Geriatric Medicine, 2002-present.
South Carolina Board of Medical Examiners, Medical Chart Review in
    Disciplinary Investigations, 1997-present.
Carolina Medical Review, Quality Advocate for Medicare Patients, 1999-2004.
Carolina Medical Review , Medical Chart Review for Standard of Care in Family
    Practice, Emergency Medicine and Geriatric Patients, 1989-2004.
Oral Examiner, Board of Certification in Emergency Medicine, 1999-present.
Written Examiner, Board of Certification in Emergency Medicine, 2000-present.
Riverside Hospital Institutional Review Committee, Newport News, Virginia
    1985-1987.
Kingston Nursing Center at Conway Hospital, Conway, South Carolina, Quality
    Assurance Committee, 1988-1991.

## PROFESSIONAL TEACHING EXPERIENCE:

University of Maryland School of Nursing, Nurse Practitioner Preceptor, 2004-
    present.

-2-

12/2006

**(continued, Professional Teaching Experience).**

Good Samaritan Hospital, Residency Facilitator, 2004-present.

Good Samaritan Hospital, Nursing Grand Rounds Faculty, 2004-present.

South Carolina Dieticians Association Annual Meeting, 2001.

Catawba - Wateree AHEC, Lancaster, South Carolina, Excellence in Health Care Through Education. Topics of Family Practice, Geriatrics and Emergency Medicine. Instructor and Field Trainer of Physicians, Nurses, Physician Assistants, Nurse Practitioners and Interdisciplinary Professionals and students, 1999-2004.

Maryland Institute for Emergency Medical Services (MIEMSS), Clinical Instructor of ATLS, 1999-present.

South Carolina Trauma Committee, Greenville, South Carolina, Clinical Instructor of ATLS, 2000-2004.

Conway Hospital, Conway, South Carolina, Physician Coordinator for Nursing Grand Rounds, 1988-1991.

Riverside Hospital, Newport News, Virginia, DOCS Program Instructor, worked with high school teachers to provide students with lectures on pertinent medical issues, 1984-1987.

United Cerebral Palsy, Baltimore, Maryland, Co-developed and implemented a program to move adult individuals with Cerebral Palsy out of institutional placement into apartment complexes in the Baltimore area, 1978-1980.

# PROFESSIONAL PEER REVIEW - ADMISORY PANELS:

Journal of Musculoskeletal Medicine, 1998-present.

Patient Care, 1998-present.

Family Practice Management, American Academy of Family Physicians, 1998-Present.

Family Practice Recertification, 1999-present.

Preparing For The Oral Board Exam in Emergency Medicine, editor, Carol Rivers, MD., 1999-2004.

Preparing For The Written Board Exam in Emergency Medicine, editor, Carol Rivers, MD., 1999-2004.

Medical Economics, editor board, 1999-present.

Clinical Geriatrics, 1998-present

Healing Manual of Association of Christian Therapists, a compilation of case illustrations of Christian healing prayer in a variety of professional contexts, 2000-present.

Bulletproofing Your Medical Practice, Risk Management Techniques That Work, author, Kevin M. Quinley, 2000.

Writing And Defending Your Expert Report, author, Steven Babitsky, Esq. and James J. Mangraviti, Jr., Esq., 2001.

-3-                                    12/2006

**(continued, Professional Peer Review – Advisory Panels).**

Pfizer Urgent Care Physician Regional Consultant, 2001-2005.

## PROFESSIONAL BOARD MEMBERSHIPS:

Horry County Hospice, 1990-1992.
American Board of Forensic Medicine, 2000-present.
American Academy of Certified Experts and Consultants, 2000-present.

## PROFESSIONAL COMMITTEES:

Good Samaritan Hospital Quality Assurance and Risk Management Committee
     2002-present
Good Samaritan Credentials Committee, 2004-present.
Good Samaritan Emergency Medicine Committee, 2002-present.
Wallace Thomson Emergency Medicine Committee, 1996-2001.
Wallace Thomson Emergency Medicine Peer Review and Quality Assurance
     Committee, 1996-2001.
Wallace Thomson Patient Quality Assurance Committee, 1999-2001.
George Washington Medical School Admissions Committee, Regional
     Interviewer, 1999-2002.
South Carolina College Emergency Physicians Legislative Committee, 1999-
     2002.
South Carolina Medical Association Committee, Maternal Child, Infant Welfare,
     1990-1991.
Conway Hospital Pharmacy and Therapeutics Committee, 1987-1991.
Conway Hospital, Conway, South Carolina, ICU Committee, 1987-1991.
Riverside Hospital Patient Education Committee and Chairman of Riverside
     Family Practice Center Patient Education Committee, 1985-1987.
Riverside Hospital Medical Education Committee, 1985-1987.
Riverside Hospital Institutional Review Committee, 1985-1987.
George Washington Medical School, Admissions Committee, 1981-1984.

## CURRENT PROFESSIONAL EXPERIENCE:

Good Samaritan Hospital, Baltimore, Maryland, Associate Medical Director,
     Emergency Department, 2002-present.
Good Samaritan Hospital Nursing Center, Attending Physician 2006-present.
Good Samaritan Hospital, Baltimore, Maryland, Medical Director of Transitional
     Care Unit, 2006-present.
Medstar-Ravens-NFG, Team/Stadium Physician, 2004-present.
Physicians Weight Loss Center, @Good Samaritan Hospital, Baltimore, Maryland
Medical Director, 2006-present.        -4-                        12/2006

## PAST PROFESSIONAL TRAINING AND EXPERIENCE:

Clinical Assistant, John F. Kennedy Institute and Johns Hopkins University School of Medicine; Drs. Rod Boe, Lynn Parker and Michael Cataldo, Department of Pediatrics, Psychiatry and Behavioral Psychology; Clinical training in Behavioral Modification for Developmentally Disabled & Normal Children in outpatient and inpatient services of the Kennedy Institute and Department of Pediatrics, 1977-1979.

Research Assistant: The John F. Kennedy Institute and Johns Hopkins University School of Medicine: Drs. Bruce Bird, Michael Cataldo and Dennis Russo, Departments of Pediatrics, Psychiatry, Neurology and Behavioral Psychology; contributed to design, implementation, data compilation and data analysis or research on the effects of EMG Biofeedback in treatment of Neuromuscular Movement Disorders, 1978-1979.

Research Assistant: The Behavioral Medicine Center, Johns Hopkins Hospital, Drs. Bruce Masek, Thom Cayton, Lynn Parker, Eric Ward. Clinical experience in research on Biofeedback and Behavioral Therapy in Adult Psychosomatic and Mental Disorders, 1977-1979.

Research Assistant: Drs. Mark Bradshaw, Bruce Bird, Renee Wachtel, Andrew Morgan, James Copeland and Michael Cataldo. Co-investigator of a drug assessment program designed to quantitatively measure drug effects on children with Choreoathetoid Cerebral Palsy and Dystonia Musulorum Deformans. 1977-1979.

Counselor, United Cerebral Palsy, Baltimore, Maryland. Co-developed and implemented a program to move adult individuals with Cerebral Palsy out of institutional placement into apartment complexes in the Baltimore area. 1978-1980.

Orderly, Havre de Grace Memorial Hospital, Havre de Grace, Maryland. 1980-1983.

Family Practice Internship, Riverside Family Practice Program, Riverside Hospital, Newport News, Virginia, affiliated with Medical College of Virginia, completed 1985.

Family Practice Residency including Obstetrics, Riverside Family Practice Program

Riverside Hospital, Newport News, Virginia, affiliated with Medical College of Virginia, 1985-1987.

Walter Reed Memorial Hospital, Glouster, Virginia, 1985-1987.

Physicians Weight Loss Centers, Medical Director, Newport News and Hampton Virginia offices, 1985-1987.

Riverside Hospital Heart Institute, Cardiac Rehabilitation Program, Newport News Virginia, 1986-1987.

-5-

12/2006

## (continued – Past Professional Training and Experience)

Medical Examiner of the City of Newport News, Virginia, 1985-1987.

Rehabilitation Institute of Virginia, responsible for supervising rehabilitation of stroke and accident patients, 1986-1987.

Patrick Henry Health Care Center, Newport News, Virginia. Full service Nursing Home providing acute and chronic care, 1985-1987.

South Horry Medical Center, Conway, South Carolina. Public Health Service contract, 1987-1990.

Medical Director, South Horry Medical Center, Conway, South Carolina. Public Health Service contract, 1989-1990.

Conway Hospital, Conway, South Carolina. Department privileges in Family Medicine, ICU/CCU, Emergency Medicine, Pediatrics, Nursing and OB/GYN, 1987-1995.

Conway Nursing Center, Conway, South Carolina. Full service Nursing Home providing acute / chronic care, 1987-1990.

Cathcart Smith Cardiac Rehabilitation Center, Conway Hospital, Conway, South Carolina. Rehabilitation of coronary artery disease, hypertensive and obese patients, 1988-1990.

Kingston Nursing Center at Conway Hospital, Conway, South Carolina. 1988-1990.

Grand Strand Hospital, Myrtle Beach, South Carolina, 1989-1990.

Med Corps, Columbia, South Carolina. Conway Hospital, Kershaw Hospital and Fairfield Hospital, 1987-1997.

Physicians Weight Loss Centers, Conway, South Carolina. Medical Director 1987-1990.

Carolina Counseling and Medical Associates, Columbia, South Carolina. Medical Director. Christian based family practice and counseling, 1989-1994.

National Emergency Services (NES), Virginia Beach, Virginia. Chesterfield General Hospital, Marlboro Park Hospital and Clarendon Memorial Hospital, 1988-1994.

Surfside Medical Center, Surfside Beach, South Carolina. General Family Practice and Urgent Care, 1988-1995.

Family Health Center, Orangeburg, South Carolina. Completed Public Health Service Contract, 1990-1992.

The Regional Medical Center, Orangeburg, South Carolina. Department privileges in Medicine, ICU/CCU, Emergency Medicine, Pediatrics, OB/GYN, 1990-1992.

PeeDee Emergency Medicine Associates, Manning, South Carolina. Clarendon Memorial Hospital, Byerly Hospital and Florence General Hospital. 1991-1994.

Brunswick Hospital, Supply, North Carolina. 1991-1996.

Frontiers International Conference, Netherlands. Medical Director. Provided medical care for 800 missionary families coming the mission field for a period of rest and revival, August 1996.

Marion Memorial Hospital, Marion, South Carolina, 1988-1997.

-6-

12/2006

**(continued – Past Professional Training and Experience)**

Chesterfield General Hospital, Cheraw, South Carolina, 1997-1998.
Mary Black Hospital, Spartanburg, South Carolina, 1998-2000.
Providence Hospital, Columbia, South Carolina, 1999-2001.
Wallace Thomson Hospital, Union, South Carolina, 1996-2001.
House Calls USA, 1997-2001.
Physicians Weight Loss Center, Lexington and Columbia, South Carolina.
Medical Director, 1995-2002.
Dorn Veterans Administration Medical Center, Columbia, South Carolina, 2000-2002.

## HONORS:

Eagle Scout - Boy Scouts of America. 1972
Resident of The Year - Patrick Henry Nursing Home, Newport News, Virginia.
1987.
Paul Harris Fellow - Rotary International. May 1990.
Who's Who In America. 1991.
International Who's Who of Professionals In The Millennium 2000.
Swathemore's Who's Who In The Millennium 2000.
Inaugural Ball Staff for Ronald Reagan - George Bush, 1981 and 1985.
Top Doc Recognition - Consumer Research Council, Washington DC 2003-present.
Chairman of Annual Good Samaritan Hospital Annual Fashion Show 2006
Good Samaritan Hospital Legacy

## CURRENT MEMBERSHIPS:

American Academy of Family Practice (AAFP)
American Medical Association (AMA)
American Association of Physician Specialists (AAPS)
Association of Clinicians For The Underserved - Charter Member (ACU)
American College of Forensic Examiners (ACFE)
American College of Emergency Physicians (ACEP)
American Geriatrics Society (AGS)
Doctors Without Borders
National Federation of Independent Business Owners (NFIB)
Med-Chi, Baltimore, Maryland
American Medical Directors Association
Christian Life Assembly, Columbia, South Carolina

-7-                                        12/2006

# ATTACHMENT B

# EXPERT DISCLOSURES

# HART KERLIN,
# FIRE AND
# INVESTIGATION
# EXPERT



**TRIDENT**
*Engineering*

May 1, 2008


Claire Whitaker, Esq.
U.S. Dept. of Justice
U.S. Attorney's Office
555 4th St. NW, Rm. E4827
Washington, DC  20530

Claim No.: 07-1169/ H1625360
DOL: 3/19/2006
Insured: United States of America
Trident Contract No.: 1278-001

Dear Ms Whitaker:

On February 20, 2008, Trident Engineering Associates, Inc. (Trident) was authorized to provide consultation services in the case of Benjamin Saunders (deceased) v. the United States of America.  The case was assigned to and conducted by Hart C. Kerlin, Certified Fire and Explosion Expert.

## BACKGROUND

On March 19, 2006, Mr. Benjamin Saunders was a patient at the Veterans Administration Hospital, 50 Irving Street NW, Washington, DC.  On that date, Mr. Saunders was found on fire in his wheelchair in the smoking room on the second floor of the facility.

## INVESTIGATION/EXAMINATION

## OBSERVATIONS

On March 19, 2006, no one from Trident Engineering Associates, Inc. was involved with this fire.  On February 26, 2008, a joint evidence inspection took place at Metropolitan Police Evidence Control Department 2235 Shannon Place, SE, Washington, DC 20020. Present were W. Charles Meltmar of The Cochran Firm and David Hammerman, FPE of Marshall A. Klein & Associates, Inc., Assistant U.S. Attorney Claire Whitaker and Mr. Hart C. Kerlin, CFEI of Trident.

The following information and observations were collected during the site visit:

1. The evidence stored at the police facility had all been recovered by the Metropolitan Police officials on the date of the fire.  This evidence has been stored at this law enforcement warehouse since its recovery.  There were nineteen (19)

Page 2
Case: Saunders v. USA
Trident Contract No.: 1278-001
May 1, 2008

pieces of marked evidence. On this initial visit, no photographs were allowed to be taken.

2. Included in the evidence was the wheelchair where Mr. Saunders had been located at the time of the fire. The chair was partially burned, the battery and motor intact, and the leg pieces were found on the seat of the chair.

3. Among the items seen and noted were four cigarette lighters, two separate from the fanny pack and two inside the fanny pack. There were two quantities of cigarette remains found, one being separate from the fanny pack and the other was in the fanny pack. There was also burned clothing from Mr. Saunders.

4. Additional evidence viewed during this evidence inspection included:
   a. plastic ties to the fire extinguishers;
   b. a fire extinguisher pin;
   c. metal;
   d. hospital towels and blankets;
   e. a sealed quart can with unknown evidence;
   f. three fire extinguishers, a CO2 and two ABC dry chemical, all canisters red in color; and,
   g. the items labeled as removed from the office of the medical examiner which included the fanny pack, shirt material, pants remains, and jacket remains.

5. The wheelchair was labeled as Invacare Corporation, 1200 Taylor Street, Elyria, Ohio 44036. Other markings included DKPMA 03, MK5 NX-LP and a bar code tag. The style was a Nutron R32. The evidence tags on the wheelchair were photographed during a subsequent inspection.

6. Another evidence inspection was conducted on April 28, 2008 at the Evidence Control Branch of the Metropolitan Police Department. Present at this time was Dr. Terrance Baker, emergency care expert, Attorney Claire Whitaker, and Mr. Hart Kerlin. It was during this inspection that photographs were taken and are attached to this report.

7. In viewing the entire array of evidence, Trident's investigator did a reconstruction of the materials present. Reviewing the burn patterns on the wheelchair, the fanny pack that Mr. Saunders had on his person, and the contents of that pack as well as the pants that Mr. Saunders was wearing, the materials disclosed a burn pattern to the left side of the wheelchair toward the patient side.

8. During the inspection of the wheelchair, the Trident investigator examined other heat sources: the motor, battery, as well as related wiring. All the wiring was

Page 3
Case: Saunders v. USA
Trident Contract No.: 1278-001
May 1, 2008

intact, exhibiting no evidence of being a fire cause. The battery was still intact and connected. There was a plug found disconnected by the motor area and it was plugged back in by Dr. Baker and this investigator. The on and off toggle switch at the right side arm area was moved to the "on" position and the lights came on at the hand control area. This indicated an electrical connection between the battery and the upper controls. Next, an attempt was made to make the wheelchair move under power. When the attempt was made, clicking could be heard at the transfer casing but the chair did not move. Consideration was given to this chair having been moved several times since March 19, 2006 and therefore the mechanics might have needed adjustment. It was also noted that the Interstate battery held the charge for over two years.

9. The burning of the wheelchair is to the left side if one were sitting in the chair. The cushion to the seat was partially burned and melted based on the materials. The worst damage was to the left side of the cushion. No damage under the cushion and the limited area of seat cushion damage was due to the patient, Mr. Saunders, sitting in it at the time of the fire. The left side hard plastic was melted. The seatbelt to the chair was found intact and based on all known information, the patient would have been sitting on the seatbelt as it revealed no burn damage or heat exposure. Moving up from the seat on the inside of the wheelchair along the left side, the burn pattern begins to expand, widening as it moved upward. At the left armrest, also a hard plastic, the armrest was melted and lined up with the pattern coming up from the side of the chair. There was a shred of shirt material melted to the left armrest. The position of the pattern is toward the front rather than the back of the wheelchair. This can be seen in the attached photographs of the wheelchair as seen during the second inspection.

10. From the clothing remains, the pants worn by Mr. Saunders were moved to the wheelchair and placed in the seat area and set up to resemble the pants sitting down. There was a "V"-type damage to the pants at the left side as he would have been sitting and it matched the pattern from the wheelchair.

11. Added to this mix was the fanny pack that was found to be burned on one side and not the other. The unburned side was toward the patient, Mr. Saunders. The damaged fanny pack was taken to the wheelchair and lined up with the burn pattern against the wheelchair, indicating the fanny pack location at the time of the fire, and all parts lined up showing the seat of the fire to be on the left side of the wheelchair, between the wheelchair and the patient. This was photographed with the fanny pack in place.

12. This fanny pack was black in color and had zippers for the top. It had a waist strap on it. The fanny pack was burned to one side, the side away from the

Page 4
Case: Saunders v. USA
Trident Contract No.: 1278-001
May 1, 2008

patient. The burned side revealed the contents to the fanny pack. Much of it was melted together from the heat of the fire and became solid again once all the materials cooled. Items seen and identified were various coins (money), at least one watch and band, cigarettes, and two orange lighters. One label could be read as a BIC make. The other lighter was damaged from the top back at least an inch from the original top of the lighter. Sticking out of the center of the lighter was a spring from the internal workings. During the second evidence inspection, Trident's investigator was able to remove the damaged lighter from the solid remains and noted the bottom couple of inches of the lighter were intact. The damaged lighter was photographed and placed back into the opening in the fanny pack remains. Missing from the top of that lighter were the remains of the exterior housing, the flint, the wheel at the top, and the windshield. Both the shield and wheel are made of metal. In the quart can of evidence, the windshield to a lighter was found and as this was the only lighter missing a windshield, process of elimination would make this the windshield to the damaged lighter. A BIC lighter measures three and a quarter inches long from the bottom to the top of the wheel. An enclosure with this report is a break down of a BIC J-26 lighter supplied to me by the BIC lighter company.

13. Inside the fanny pack, the two orange lighters were found to be diagonally facing down and their tops were close together as seen in the photographs taken and enclosed with this report. The lighters would have been much closer together when the damaged lighter was still intact.

14. On April 25, 2008, Hart Kerlin went to the Veterans Administration Hospital, 50 Irving Street NW, Washington, DC where he met with Assistant U.S. Attorney Claire Whitaker. Mr. Kerlin went to the second floor where Mr. Saunders had been living in 2006 and also where the fire occurred that same year. Trident's investigator was taken to view the smoke room. During this visit, Mr. Kerlin took photographs and measurements, then made a diagram of the smoke room and entryway. In the overview, the room designated for smoking had no obvious combustible materials. The room is glass enclosed with metal framing. The room has four sprinkler heads, metal chairs, and cigarette receptacles appropriate for this area. Outside the enclosure is a large patio where there are areas designated for smoking and no smoking.

15. While at the hospital, Trident interviewed Jerry Phillips. Mr. Phillips is a nursing assistant who had become acquainted with Mr. Saunders through caring for him and then visiting with him on a regular basis. Phillips and Saunders, both smokers, often met in the smoke room. On the average, the time spent talking with Mr. Saunders was 10 - 15 minutes each. Mr. Phillips reports that at the time of the visit on March 19, 2006, he found Mr. Saunders in his wheelchair in the smoke room alone. Mr. Phillips went in and sat to the right side of the entry

Page 5
Case: Saunders v. USA
Trident Contract No.: 1278-001
May 1, 2008

door on a windowsill ledge. Mr. Saunders was in his wheelchair smoking and he was positioned with the wheelchair facing at an angle toward Mr. Phillips. They chatted and then Mr. Phillips indicated he was leaving for dinner and he would see him (Saunders) later. Still, Mr. Saunders was alone in the smoke room. Mr. Phillips left the room, went to his locker, got his lunch out, took it to a microwave (2 minutes on timer), and then sat down to eat in what they call the "quiet room." Fellow workers asked Phillips where he got the food and he remembered he had a flyer in his locker. Before even taking a bite of food, he went to get the flyer. At the same time, he wanted to get a drink from the vending machine and while going in that direction, he observed a nurse looking in the direction of the smoke room and gasped. Mr. Phillips then looked in the same direction and saw Mr. Saunders on fire. He ran to the entryway and grabbed the fire extinguisher from the wall just outside the smoke room. He entered the smoke room and after pulling the pin, squeezed the trigger of the fire extinguisher, only to not have it work at all. He was unable to reach the wheelchair and he left calling for help and looking for another fire extinguisher. Someone brought him another fire extinguisher and he used it to put the fire out. Mr. Phillips stated that flames were seen about three feet over the head of Patient Saunders and that no sounds were coming from Saunders the entire time. Mr. Phillips noted to Trident that Mr. Saunders was not in the same position he had left him and that he was still in the same area of the entry door but facing 180 degrees in the opposite direction.

16. Going back to just before Mr. Phillips left Mr. Saunders in the smoke room, he stated that he and Saunders had a nice conversation and Saunders was happy and remembering times he took walks. His attitude was positive and nothing was noted by Mr. Phillips. He had seen Mr. Phillips smoking when he came into the smoke room, but when he left, he remembered that the patient had a cigarette in his mouth, a long one (new) and he did not remember seeing this cigarette lit at the time.

17. As part of its investigation, Hart Kerlin contacted the District of Columbia Fire Marshal's Office. Trident spoke to Sergeant Phil Proctor, in charge of the unit, who related that the fire was investigated on the date of loss by Alan Lancaster of his office. The report was written but never released or finalized. A copy of the report was made available to Trident and is attached to this report.

18. The fire marshal's report indicates that the cause of this fire was undetermined. Further, the narrative of the report by Investigator Lancaster revealed that once he arrived, the scene was disturbed and the wheelchair for Mr. Saunders was already outside the enclosure. Homicide detectives for the Metropolitan Police Department were on the scene and took charge. Investigator Lancaster did not complete an investigation.

Page 6
Case: Saunders v. USA
Trident Contract No.: 1278-001
May 1, 2008

19. The Metropolitan Police Department were the ones who labeled this a crime scene and removed the evidence items that Mr. Kerlin saw at their evidence branch. In reading their reports, they did a good job following protocol but needed the fire department's input, in particular Investigator Lancaster to give them a determination of the origin and cause of the fire. In turn, Lancaster advised he was waiting on the autopsy report to conclude his investigation. In summary, this had become a stalemate.

20. Hart Kerlin read the autopsy report and the cause of death were the burns to Mr. Saunders and the manner of death was labeled an accident. The description of the body, as viewed before a full autopsy was performed, stated that there was an endotracheal tube in the mouth secured with tape and EKG pads on the chest indicating advanced life support medical action was taken. The report states he was 64 years old, 5'7" and 128 pounds. His toxicology report states his carbon monoxide content was less than 3%. This information was taken from the official Toxicology report of the District of Columbia Medical Examiner Office dated April 7, 2006. The autopsy was conducted March 20, 2006.

21. In review of the reports submitted and interviews conducted, Mr. Kerlin read the police reports and all had written interviews of persons associated with the fire incident on March 19, 2006.

**TESTING**

On April 30, 2008 and May 1, 2008, we began testing at the Trident Engineering Associates, Inc. office in Annapolis, Maryland in the area known as the "clean room." Trident's testing activities revealed the following:

1. A BIC lighter was set upon the worktable and the red button depressed on top of the lighter, allowing the gas to escape (isobutane). From above, a Weber matchless lighter was lit and the flame lowered toward the lighter on the table. When the flame of the Weber lighter neared the BIC lighter, the escaping gas ignited. This was repeated and the average distance from the lighter on the table to the flame was six inches.

2. This was repeated with three different BIC lighters over a two-day period. On the second day of experiments, the distance continued to be the same with a new BIC lighter or one that had prior use and less fuel. This was video recorded in the clean room during this experiment. A compact disc of the testing is provided with this report.

Page 7
Case: Saunders v. USA
Trident Contract No.: 1278-001
May 1, 2008

   3.  Assistants to this testing included Mr. Stanley J. Dapkunas, P.E. and the person who filmed the testing, Ms. Minna J. Leydorf, P.E.

## DISCUSSION

Though two years have passed since the fire occurred, an abundance of evidence was retained by the police department and key witness information and persons were still available for interview.

Based on the review of the several depositions taken and read, the official reports obtained and read, and the evidence and facts in this case, at no time prior to Hart Kerlin's investigation was a fire origin and cause investigation conducted.

The experiments conducted were in line with the evidence seen. There were four cigarette lighters found on and around Mr. Saunders and four were taken into custody that can be accounted for at this time. There might be more inside the fanny pack but it would require heating the materials and separating them in order to see what else was inside his pack.

## CONCLUSIONS

Based upon a review of information gained from others and from its own observation, investigation, experience, education and analysis of the evidence and facts and testing, Mr. Hart C. Kerlin, CFEI of Trident Engineering Associates, Inc. concludes, to a reasonable degree of scientific certainty, that:

   1.  This fire resulted from the release of the liquid and/or vapors from a cigarette lighter in the pouch of the fanny pack that was ignited by a heat source, possibly a lit cigarette but more probably by the flame of another lighter in use by Mr. Saunders.

   2.  The fanny pack, filled with personal items, was located to the left front side of the patient, Mr. Saunders, at waist level. Between the numerous items in the fanny pack and the side of the wheelchair, there was pressure applied to the lighter(s) and the vapors were released into the air, isobutane being lighter than air. Possibly damage to the one lighter released the liquid inside the lighter, which would vaporize once outside the lighter and rise toward a lit cigarette or the flame of a lighter in use.

   3.  There was vapor ignition from at least one lighter that was damaged or depressed at the button, allowing for vapor escape by a heat source above the level of the pouch.

Page 8
Case: Saunders v. USA
Trident Contract No.: 1278-001
May 1, 2008


In preparing this report, Trident has been thorough and accurate and met the standards generally expected from members of the engineering profession and in accordance with Trident's General Provisions. Trident reserves the right to revise its opinion if further information is discovered. By accepting delivery of this report, the recipient agrees that Trident shall not be liable for any special, indirect, incidental, or consequential loss or damage whatsoever.

All enclosures will be sent under separate cover with a hard copy of this report.

Very truly yours,

Hart C. Kerlin, CFEI
Investigating Engineer

Robert F. Hunt
Vice President, Technical Director
Reviewer


HCK:RFH/clw

Enclosed:  (1) Photographs of Evidence
           (2) Photographs of VA Hospital Site Inspection
           (3) Diagram of Areaway & Smoke Room, VA Hospital
           (4) CD of Lighter Ignition Testing Video at Trident
           (5) BIC Cigarette Lighter & Diagram Parts List
           (6) Fire Marshal's Report, District of Columbia
           (7) Trident Fee Schedule
           (8) Guideline Reference Documents



## <u>APPENDIX 1</u>

### Photographs of Evidence



## APPENDIX 2

**Photographs of the VA Hospital Site Inspection**



## APPENDIX 3

**Diagram of the Areaway and Smoke Room at the VA Hospital
Washington, DC**

## <u>APPENDIX 4</u>

**Compact Disk of Lighter Ignition Testing Video
at Trident's Offices**



## **APPENDIX 5**

**BIC Cigarette Lighter Diagram and Parts List**



## <u>APPENDIX 6</u>

### District of Columbia Fire Marshal's Report



## APPENDIX 7

**Trident Engineering Associates, Inc. Fee Schedule**



## APPENDIX 8

### Guideline Reference Documents

Trident Engineering Associates, Inc. utilized the following publications for research and guidance. The following are authoritative references:

1. NFPA 921, Guide for Fire and Explosion Investigations, 2004 Edition.

2. Ignition Handbook, Vytenis Babrauskas, Ph.D., by Fire Science Publishers, a division of Fire Science and Technology, Inc. (2003)

3. Boedeker Plastics: Acetal Polyoxy Methylene Datasheet, boedeker.com, obtained online 5/1/2008.

4. Wikipedia, the free encyclopedia online, Polyoxymethylene, obtained online 5/1/2008.

5. Forensic Fire Scene Reconstruction, seminar notebook, date April 1 - 3, 2008. Authored by Drs. John DeHaan and David J. Icove.

6. BIC Lighter, www.flickyourbic.com, Internet contact with the company, 2/27/2008.